UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DONNEIL FOSKEY,

                              Plaintiff,

v.                                                                  9:20-cv-0504
                                                                    (LEK/TWD)

DANIEL PAIGE et al,

                              Defendants.
_____

APPEARANCES:                                        OF COUNSEL:

CAITLIN ROBIN AND ASSOCIATES PLLC       FRANK A. DiSCIPIO, ESQ.
30 Broad St. Suite 702                               MARK LAUGHLIN, ESQ.
New York, NY 10004

HON. LETITIA JAMES                            BRITTANY M. HANER, ESQ.
New York State Attorney General               RACHAEL OUIMET, ESQ.
Attorney for Defendants
The Capitol
Albany, New York 12224

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## REPORT-RECOMMENDATION AND ORDER

**I.  INTRODUCTION**

Plaintiff Donneil Foskey ("Plaintiff") commenced this action on May 5, 2021, Dkt. No. 1, and filed an amended complaint on December 22, 2021, Dkt. No. 49, against Defendants Connor Irish, Teudy Nuesi, and Daniel Paige ("Defendants").[1] Plaintiff's claims arise out of a use of force incident and confinement in a temporary isolation "dry" cell while he was in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS") at Washington Correctional Facility in August, 2019. *See generally*, Dkt. No. 49.

---

[1] Citations to the parties' submissions will refer to the pagination generated by CM/ECF, the Court's electronic filing system.

## II.     BACKGROUND

On July 11, 2019, Plaintiff was transferred from Fishkill Correctional Facility to Washington Correctional Facility. Dkt. No. 122 at 113-14. Plaintiff alleges on August 11, 2019, he was in the visiting area when Defendant Irish claimed he observed Plaintiff receive contraband and escorted him to the search area. Dkt. No. 49 at 3. Plaintiff denied receiving contraband but Defendant Irish called for assistance. *Id.*

Defendant Paige discharged pepper spray into Plaintiff's eyes and face and Defendants Paige and Nuesi forcibly tackled Plaintiff to the ground. *Id.* The Defendants proceeded to punch, slap, and kick Plaintiff, causing physical injuries, then threw him into a van where he suffered a seizure. *Id.* Thereafter, he was placed in a "dry cell" for approximately two and a half weeks, but was not found to be in possession of contraband. *Id.*

As a result of the incident, Plaintiff was issued a misbehavior ticket, *see* Dkt. No. 88-3 at 22, and was subsequently found guilty of assault on staff, violent conduct, failure to obey a direct order, and violation of search/strip procedures, Dkt. No. 88-11 at 8. Plaintiff drafted and submitted multiple complaints about the incident utilizing DOCCS' Inmate Grievance Program ("IGP"), as discussed in greater detail below. *See* Dkt. No. 88-11 at 50-58. On September 19, 2019, Plaintiff was transferred from Washington Correctional Facility to Upstate Correctional Facility. Dkt. No. 122 at 71. On October 1, 2019, he was again transferred from Upstate Correctional Facility to Great Meadow Correctional Facility. *Id.* at 75.

Plaintiff filed his complaint in the instant matter on May 5, 2020. Dkt. No. 1. The Defendants' motion to dismiss, Dkt. No. 21, was granted in part and denied in part on March 25, 2021, Dkt. No. 29 at 11. Defendants submitted an answer. Dkt. No. 31. Plaintiff filed an amended complaint, Dkt. No. 49, and the Defendants submitted answers, Dkt. Nos. 53, 60.

On January 13, 2023, Defendants filed a motion for summary judgment. Dkt. No. 88. Defendants argued Plaintiff failed to exhaust his administrative remedies before commencing this action and his claim for deliberate medical indifference should be dismissed for failure to state a claim under the New York Constitution and lack of subject matter jurisdiction. Dkt. No. 88-2 at 9-12. Plaintiff averred issues of material fact existed as to whether he fully exhausted his administrative remedies and whether such remedies were available to him, and his deliberate medical indifference claim was cognizable and should not be dismissed. Dkt. No. 96-2 at 2-10.

On July 18, 2023, Senior District Judge Lawrence E. Kahn denied Defendants' motion for summary judgment. *See generally*, Dkt. No. 100. Judge Kahn concluded, because the parties disagreed as to whether Plaintiff appealed the facility superintendent's denial of his grievance to the Central Office Review Committee ("CORC") so as to exhaust his administrative remedies, summary judgment would be improper. *Id*. at 10-11. Accordingly, Judge Kahn referred the mater to the undersigned for the purpose of conducting an exhaustion hearing pursuant to *Messa v. Goord*. *Id*. at 10-11; *see also* 652 F.3d 305 (2d Cir. 2011).

### III.   HEARING TESTIMONY

This Court conducted an exhaustion hearing on December 4, 2023. *See generally*, Dkt. No. 122. The Defendants called four witnesses and the Plaintiff testified as follows.

#### A.   The Defendants' Witnesses

##### 1.   Matthew Waters

Matthew Waters testified he served as the IGP supervisor at Washington Correctional Facility. Dkt. No. 122 at 11-12.

Waters explained Directive 4040 set forth DOCCS' policies for inmate grievances and was in effect during 2019. *Id*. at 13-14. Under the directive, inmates are required to submit

3

complaints in writing to the IGP grievance clerk, who logs the receipt of the grievance and assigns it a number. *Id*. at 14. An IGRC committee then conducts an investigation into the matter, holds a hearing, and renders a decision which an inmate may appeal to the superintendent. *Id*. However, "Code 49" grievances, which contain allegations of staff misconduct, are submitted by the IGP clerk to the superintendent directly, to render a decision within 25 days of the filing date. *Id*. at 17.

Waters testified the IGP office would send the superintendent's written decision, with a "superintendent response form," to the grievant. *Id*. at 18. To appeal the superintendent's decision, an inmate is required to submit their completed response form to the IGP office within seven days of the receipt of the superintendent's response. *Id*. Alternatively, an extension of time to file an appeal may be submitted to the office in writing. *Id*. at 18-19. Once a completed superintendent response form is received, it is logged by the IGP clerk and mailed to the Central Office with a cover page. *Id*. Waters stated the IGP program was available to incarcerated individuals at Washington Correctional Facility in 2019. *Id*. at 20.

Waters confirmed he received grievances from Plaintiff at Washington, contained in Defendants' Exhibit 3. *Id*. at 26. He explained the consolidated grievances were logged, filed, and assigned number "WSH7781-19" on August 20, 2019. *Id*. at 27-28. Because the grievances contained allegations of harassment, it was sent to the superintendent. *Id*. at 28.

On September 13, 2019, Superintendent Tynon issued the decision denying Plaintiff's consolidated grievance(s). *Id*. at 29. Upon receipt of a superintendent decision, Washington's IGP office would make a log, copy the decision, and send it to the inmate via mail. *Id*. at 30. Waters clarified the individual would receive the decision by mail through the mail supervisor, typically within one day. *Id*. However, if the individual had been transferred to another facility,

the superintendent's response would be sent via "privileged mail," also known as "legal mail." *Id*. at 31.

Waters testified he performed weekly rounds of the SHU and reports indicated he did so on September 5, 13, 20, and 24, of 2019. *Id*. at 32-33. He stated Plaintiff did not request his assistance with filing an appeal of the superintendent's decision, or submit a completed appeal, during his September 13, 2019, SHU round. *Id*. at 35. Waters further reported he did not ever receive an appeal of the superintendent's September 13, 2019, denial of Plaintiff's grievance and, if he had received such an appeal, it would have been documented by the facility IGP office. *Id*. at 35-36.

On cross-examination, Waters clarified the dates appearing on the grievances contained in Defendants' Exhibit 3 did not indicate the date the documents were received by the IGP office, rather, the grievances were received in a single envelope on or about August 20, 2019. *Id*. at 39-41. Specifically, with respect to the date "8/13" appearing on one page, Waters explained, "That's his writing, not my writing." *Id*. at 38. With respect to the superintendent's denial of grievance WSH7781-19, dated September 13, 2019, Waters explained it was possible Plaintiff received the denial the same day, but agreed it was more likely Plaintiff received the document the following day, September 14, 2019. *Id*. at 53-54.

### 2. Sherri Debyah

Sherri Debyah testified she was the IGP supervisor at Upstate Correctional Facility, where she received and processed grievances under Directive 4040. *Id*. at 70-71. Debyah stated Plaintiff was housed at Upstate from September 20, 2019, until October 1, 2019. *Id*. at 75. Debyah confirmed that Plaintiff's legal log at Washington Correctional Facility indicated he did

5

not receive any correspondence from Washington regarding a grievance concerning the alleged August 2019, incident while he was housed at Upstate. *Id*. at 74.

If Plaintiff had received the superintendent's decision by September 14, 2019, his seven day deadline to appeal would have been September 21, 2019, while he was housed at Upstate. *Id*. at 75. If he had sent his appeal of the superintendent's decision to the Upstate IGP office, Debyah would have written Plaintiff "a formal memo stating he would have to return this to the initiating facility where it was filed" but her review of Plaintiff's records revealed no such correspondence. *Id*. at 77. Debyah also confirmed Upstate did not share any databases with other DOCCS correctional facilities. *Id*. at 79.

### 3. Alexandria Cutler

Alexandria Cutler testified she was employed by Great Meadow Correctional Facility where she served as IGP supervisor. *Id*. at 81. Plaintiff was housed at Great Meadow from October 1, 2019, until October 18, 2019. *Id*. at 82. Cutler confirmed if Plaintiff had received the Washington superintendent's decision denying his grievance on September 14, 2019, his decision to appeal the denial would have been September 21, 2029, before Plaintiff was housed at Great Meadow. *Id*. at 85. Cutler found no record of any correspondence either to or from Plaintiff regarding an appeal of the Washington superintendent's September 13, 2019, grievance determination. *Id*. at 86.

### 4. Rachael Seguin

Rachael Seguin testified she worked for CORC as the director of the IGP, where she would respond to grievance appeals. *Id*. at 94-95. She explained the document in which superintendent Tynon denied Plaintiff's grievance contained another section labeled "appeal statement." *Id*. at 98.

Seguin was asked what an incarcerated individual was "supposed to do" if they filed an appeal with CORC but had not received a response, and she answered,

> They can reach out to the grievance supervisor at the facility where the grievance was filed when they submitted the appeal and ask them that if it's been transmitted to CORC. Then the . . . grievance supervisor can reach out to CORC to determine whether or not we received the decision. Incarcerated individuals can also write directly to our office, and we'll respond to the correspondence regarding the specific grievance.

*Id*. at 99.  She clarified such information would have been discussed during the inmate's facility orientation.  *Id*. at 100.  Further, Seguin explained the relevant rule states:

> [T]he IGP central office staff shall date stamp all appeals showing when they were received and shall notify facility grievance staffs in writing as grievances are received.  The facility IGP staff shall forward a copy of the written notice of receipt to the grievant of record.  If a grievant does not receive a copy of the written notice of receipt within 45 days of filing an appeal, the grievant should contact the IGP supervisor in writing to confirm that the appeal was filed and transmitted to CORC.

*Id*.; *see also* 7 N.Y.C.R.R. § 701.5(d)(3)(i).

Seguin testified Defendants' Exhibit 3 demonstrated Plaintiff filed a grievance alleging Washington staff assaulted him and failed to provide proper medical treatment on August 11, 2019, which was assigned grievance number "WSH-7781-19." *Id*. at 102.  She explained Plaintiff's grievance, which was filed on August 20, 2019, went directly to the facility's superintendent, who timely denied the grievance on September 13, 2019.  *Id*. at 103-04.

Seguin also conducted a search of grievance appeal files in her capacity as the DOCCS custodian of records, which revealed Plaintiff did not file any appeal with CORC related to grievance number WSH-7781-19.  *Id*. at 104-05.  Nor did he file any appeal complaining he had not received a response from Washington's superintendent pertaining to the alleged assault and failure to provide medical treatment on August 11, 2019.  *Id*. at 106.  However, Plaintiff had

7

successfully appealed two other grievances to CORC, neither of which had been filed at Washington. *Id*. Plaintiff never filed an appeal to CORC alleging issues sending or receiving mail. *Id*. at 107.

Accordingly, Seguin concluded Plaintiff did not exhaust his administrative remedies with respect to a claim of excessive force by staff at Washington Correctional Facility which occurred on August 11, 2019. *Id*. at 107-08. On cross-examination, Seguin agreed because Plaintiff's grievance was filed on August 20, 2019, the facility superintendent was required to respond by September 14, 2019. *Id*. at 110.

### A. Plaintiff

The Plaintiff testified he arrived at Washington Correctional Facility on July 11, 2019, where he was initially housed in general population, until he was placed in the SHU on July 23, 2019. *Id*. at 113-14. He explained his consolidated grievances related to an event which occurred on August 11, 2019, at Washington. *Id*. at 115.

Plaintiff testified he had previously filed grievances throughout his confinement in DOCCS custody, including one arising out of an incident involving another inmate at Mid-State Correctional Facility. *Id*. at 117. He failed to appeal the superintendent's response to his grievance, however, and Plaintiff's civil lawsuit based on the same acts was dismissed due to his failure to complete the grievance process. *Id*. at 118. Therefore, Plaintiff stated he had a "full understanding" of the IGP. *Id*.

He explained the August 11, 2019, incident at issue in this case involved Corrections Officers "Irish, Paige, and Russel." *Id*. at 119. Plaintiff had been familiar with Paige because he had been responsible for transporting Plaintiff from the SHU to visitation in the past. *Id*. Plaintiff testified there was another Officer Paige at Washington, in addition to the transport

8

officer, while he was housed there. *Id*. at 119-20. Plaintiff stated the Officer Paige who worked in the SHU "basically told me that as long as my -- my stay in this facility is going to be rough and that my grievances are -- anything I send out the cell weren't going to make it nowhere because that's his little brother and he's going to protect his brother to the fullest." *Id*. at 120. He added the Officer Paige who was assigned to the SHU worked frequently, potentially five to seven days per week. *Id*. at 121.

Plaintiff asserted he never met Mr. Waters during his time in the Washington SHU. *Id*. at 121-22. He further stated he "had to get creative" to obtain materials to submit grievances after his requests for forms and pens were denied by officers. *Id*. at 123-24. Plaintiff confirmed his grievance alleged "No supplies, mail not going out or being received, grievances not making it to front grievance office." *Id*. at 126. He also stated a date of "August 13, 2019," appearing on a grievance contained in Defendants' Exhibit 3 was not his handwriting. *Id*. at 127.

While Plaintiff was housed in the Washington SHU, corrections officers were responsible for collecting and delivering the inmates' mail. *Id*. at 128-29. He explained outgoing mail was collected by the "night shift officer" at the conclusion of the "4-to-11 tour . . . ." *Id*. at 128. He recalled the Officer Paige assigned to the SHU had collected the mail on multiple occasions while he was housed there. *Id*. at 132. Plaintiff testified he never observed anyone other than corrections officers assigned to the SHU collecting or distributing mail. *Id*. at 129. He further stated he had no recollection of Mr. Waters conducting tours of the SHU. *Id*. at 130.

Plaintiff recalled receiving the superintendent's denial of his grievance while he was in the SHU. *Id*. at 131. He explained,

> I get it. It come in the mail. The CO bring it. I open the envelope, look at it. I already know it's going to say denied. I just look at the boxes. I check the box where it says appeal. I go to the box. I write a brief description why I'm appealing. I sign it, put the date,

9

>     and I put it right back in the door because you got seven days, and
>     if you don't, it's going to be thrown out.

*Id*. Plaintiff added there was nothing more he could do beyond placing the completed appeal statement in his cell door. *Id*. at 132. Plaintiff maintained he filled out the form and placed in the door the same day it was received. *Id*. at 133.

On cross-examination, Plaintiff testified he was aware that, if he did not receive a grievance response, he could submit a grievance or letter to CORC complaining about the lack of response. *Id*. at 140. He also agreed he sent copies of some of the grievances he submitted to lawyers for record keeping purposes, but Plaintiff introduced no copies of a letter to CORC indicating he had not received a response on the appeal of his grievance. *Id*. at 140-41. Plaintiff stated he did complain about mail issues after September 13, 2019, but admitted no proof of such complaints had been presented. *Id*. at 144. Plaintiff confirmed he did not observe any corrections officer tampering with his mail and did not recall an officer collecting his grievance appeal statement from the cell door. *Id*. at 145-46.

### B. Closing Arguments

In closing, counsel argued Plaintiff's testimony established he did in fact appeal the Washington superintendent's denial of his grievance by filling out the appeal statement, signing it, and placing the document on the door of his SHU cell. *Id*. at 168. Plaintiff's attorney averred the burden should not be placed on Plaintiff to chase down a response from CORC when he was transferred out of the facility shortly thereafter. *Id*. The Defendants' attorney responded Plaintiff understood the grievance procedure, which was available to him, but did not file an appeal with CORC. *Id*. at 169. Counsel further argued Plaintiff did not send any follow-up letter to CORC, and offered no proof of tampering with his mail beyond his speculation of interference by Defendant Paige's brother. *Id*. at 170.

**IV. LEGAL STANDARD FOR EXHAUSTION**

Under the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see also Ross v. Blake*, 578 U.S. 632, 635 (2016). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007) (citing *Porter*, 534 U.S. at 524).

The PLRA requires "proper exhaustion," which means using all steps required by the administrative review process applicable to the institution in which an inmate is confined and doing so properly. *Jones*, 549 U.S. at 217-18 (citing *Woodford v. Ngo*, 548 U.S. 81 (2006)); *see also Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir. 2011). DOCCS has a well-established inmate grievance process, set forth in 7 N.Y.C.R.R. § 701 *et seq*.

First, an inmate must submit a complaint to the facility's IGP clerk within twenty-one days of the alleged occurrence. 7 N.Y.C.R.R. § 701.5(a)(1). The process provides for a period to informally resolve the grievance, and thereafter to proceed through the various steps in the appeal process. *See id*. § 701.5(b)-(d). However, a more expedited procedure applies to "those grievances that allege employee misconduct meant to annoy, intimidate or harm an inmate." *Id*. § 701.2(e); *see id*. § 701.58. Such a grievance is given a calendar number and recorded with all other grievances but is forwarded directly to the facility superintendent. *Id*. § 701.8(b). The superintendent then has twenty-five days to investigate and render a written response. *Id*. §

11

701.8(f). If the superintendent fails to render a decision within said time period, or rules against the incarcerated individual, the grievant may appeal to CORC. *Id*. § 701.8(g).

To appeal the superintendent's response, the incarcerated individual must submit it to the clerk "within seven calendar days after receipt of the superintendent's written response to the grievance." *Id*. § 701.5(d)(1). Upon receipt of an appeal,

> The IGP central office staff shall date stamp all appeals showing when they were received and shall notify facility grievance staffs in writing as grievances are received. The facility IGP staff shall forward a copy of the written notice of receipt to the grievant of record. If a grievant does not receive a copy of the written notice of receipt within 45 days of filing an appeal, the grievant should contact the IGP supervisor in writing to confirm that the appeal was filed and transmitted to CORC.

*Id*. § 701.5(d)(3)(i). CORC is required to render a written decision on the grievance within thirty calendar days of receipt of the appeal. *Id*. § 701.5(d)(3)(ii). Exhaustion of the grievance process occurs only after CORC has rendered its decision.

While the PLRA mandates exhaustion of administrative remedies, it also "contains its own, textual exception to mandatory exhaustion." *Ross*, 578 U.S. at 642. Specifically, the exhaustion requirement contained in § 1997e(a) "hinges on the 'availability' of administrative remedies: An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones." *Id*. (citing 42 U.S.C. § 1997e(a)) (alterations in original). In *Ross*, the Supreme Court identified three circumstances in which a court may find administrative remedies are not "available" for PLRA purposes, holding:

> [A]n administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates. . . . Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. . . . And finally, . . . when prison administrators thwart inmates from taking advantage of a

12

>> grievance process through machination, misrepresentation, or intimidation.

*Id*. at 643-44. In these situations, exhaustion is not required. Further, the Second Circuit has observed "the three circumstances discussed in *Ross* do not appear to be exhaustive . . . ." *Williams v. Correction Officer Priatno*, 829 F.3d 118, 124 n.2 (2d Cir. 2016).

Because the failure to exhaust administrative remedies is an affirmative defense, the defendant bears the burden of showing that an incarcerated individual has failed to satisfy the exhaustion requirements. *See Jones*, 549 U.S. at 216. Then the plaintiff must establish the administrative review process was unavailable to him under *Ross*. *See id*. "While the burden of production may shift to a plaintiff when a court considers whether the grievance process was unavailable, the ultimate burden of proof with respect to the exhaustion defense remains, at all times, with the defendant." *Hudson v. Kirkey*, No. 9:20-CV-0581 (LEK/DJS), 2021 WL 1966721, at *3 (N.D.N.Y. May 17, 2021) (citing *Coleman v. Nolan*, No. 9:15-CV-0040, 2018 WL 4732778, at *4 (N.D.N.Y. Oct. 2, 2018)) (alteration in original).

## V.   ANALYSIS

Applying the legal standard set forth above, the issue of exhaustion involves a two-step analysis. First, the Court must determine whether Plaintiff properly exhausted his administrative remedies by following all the steps required by the administrative review process. Second, if Plaintiff did not exhaust his administrative remedies, the Court must then determine whether the administrative remedy was available to Plaintiff.

While Plaintiff testified he drafted a response to the superintendent's denial of grievance WSH7781-19, signed it, and placed it his SHU cell door, Dkt. No. 122 at 131, both Washington IGP office and CORC records revealed no appeal was received. Dkt. No. 122 at 35-36, 104-06. Therefore, the Court finds Plaintiff failed to exhaust his administrative remedies under the

DOCCS IGP prior to commencing this action.  *See* 7 N.Y.C.R.R. § 701.5(d); *see also*, *e.g.*, *Shabazz v. Bailey*, No. 9:20-CV-0057 (LEK/TWD), 2023 WL 5779533, at *5 (N.D.N.Y. June 28, 2023) ("Plaintiff's failure to appeal [his] grievance . . . to CORC means Plaintiff failed to properly exhaust his administrative remedies before filing this action."), *report and recommendation adopted*, 2023 WL 5622049 (N.D.N.Y. Aug. 31, 2023).

However, Plaintiff's failure to appeal grievance WSH-7781-19 to CORC does not end the exhaustion review.  As explained above, an inmate's failure to properly exhaust administrative remedies does not preclude an action under § 1983 where a prison officials thwart his efforts to utilize the grievance process, thus rendering it unavailable to him.  *See generally*, *Ross*, 578 U.S. at 643-44.  Based on Plaintiff's testimony at the exhaustion hearing, the undersigned is satisfied DOCCS' IGP process was not fully available to him.

As an initial matter, the Defendants do not dispute placing his appeal statement to CORC in the SHU cell door, as Plaintiff testified he did, was the proper way to transmit his outgoing appeal.  Nor did any of the testimony from the Defendants' witnesses refute Plaintiff's claim he drafted, signed, and placed an appeal statement in his cell door, beyond the fact that the Washington IGP office did not receive it.  Once the completed form was placed for collection, Plaintiff had no control over the delivery of his appeal to CORC.  *See Curtis v. Bola*, No. 9:15-CV-0718 (GLS/TWD), 2017 WL 6767392, at *13 n.6 (N.D.N.Y. Nov. 28, 2017) ("While Plaintiff has presented no direct evidence proving that his appeals to CORC were thwarted by DOCCS staff machination . . . , nor can he reasonably be expected to under the circumstances, he has established to the Court's satisfaction that he put the appeals to CORC . . . in the facility mail in a timely manner and from that point on *had no control over whether they would be properly delivered to the IGP office or thereafter sent to CORC*.") (emphasis added), *report and*

14

*recommendation adopted*, 2018 WL 278673 (N.D.N.Y. Jan. 3, 2018); *see also Coleman*, 2018 WL 4732778, at *9 ("Defense counsel suggested that . . . plaintiff offered no specific evidence as to how his grievance could have been diverted.  However, *there is no way plaintiff could know how his grievances disappeared*, because inmates at Clinton were not in a position to monitor what happened during mail pick-up, sorting, or delivery.") (emphasis added).

Courts in this circuit have consistently found inmates' general claims that grievances were lost or destroyed insufficient to excuse the PLRA's exhaustion requirement.  *See*, *e.g.*, *Rosado v. Fessetto*, No. 9:09-CV-0067 (DNH/ATB), 2010 WL 3808813, at *7 (N.D.N.Y. Aug. 4, 2010) (collecting cases), *report and recommendation adopted*, No. 9:09-CV-67, 2010 WL 3809991 (N.D.N.Y. Sept. 21, 2010); *Rodriguez v. Cross*, No. 9:15-CV-1079 (GTS/CFH), 2017 WL 2791063, at *7 (N.D.N.Y. May 9, 2017), *report and recommendation adopted*, 2017 WL 2790530 (N.D.N.Y. June 27, 2017).  By contrast, here, Plaintiff testified Washington SHU Officer Paige told Plaintiff his SHU stay would be "rough," communications Plaintiff sent from his cell "weren't going to make it nowhere," and Paige would "protect his brother [Defendant Paige] to the fullest."  Dkt. No. 122 at 120.  Plaintiff's contentions are distinguishable from those allegations which have been found inadequate to excuse non-compliance with IGP requirements.  *See*, *e.g.*, *Veloz v. New York*, 339 F. Supp. 2d 505, 516 (S.D.N.Y. 2004) (finding the plaintiff failed to exhaust his available administrative remedies, noting "[e]ven assuming [the plaintiff] did submit the grievances, *he offers no evidence that any particular officer thwarted his attempts to file; he simply contends that the practice of destroying or misplacing grievances must have been the cause of his grievances being lost*.") (emphasis added), *aff'd*, 178 F. App'x 39 (2d Cir. 2006); *Encarnacion v. Spinner*, No. 9:15-CV-1411 (BKS/ML), 2020 WL 2838559, at *14 (N.D.N.Y. June 1, 2020); *Belile v. Griffin*, No. 9:11-CV-0092 (TJM/DEP), 2013 WL 1776086, at

15

*8 (N.D.N.Y. Feb. 12, 2013) ("Plaintiff's mere threadbare allegations that his grievances were intercepted and discarded, without evidence to support such allegation, including any evidence that *identifies which defendant, in particular, is responsible for discarding the grievances*, are insufficient to excuse his failure to comply with the IGP.") (emphasis added, citations omitted), *report and recommendation adopted*, No. 9:11-CV-0092, 2013 WL 1291720 (N.D.N.Y. Mar. 27, 2013).

      Defendants' argument that Plaintiff failed to produce evidence supporting this allegation is unpersuasive. First, in the same (consolidated) grievance wherein Plaintiff alleged he had been harassed and denied medical attention, he also complained about his lack of access to mail, the law library, grievance forms, and other supplies, and alleged his grievances were "Not making it to Front Grievance Office or Returning . . . ." Dkt. No. 88-11 at 52; *see also* 53-54. Moreover, the fact that Plaintiff's grievances were apparently submitted on loose leaf paper, rather than a grievance form, evinces Washington Correctional Facility Staff failed to comply with Directive 4040's "minimal standards" for SHU inmate access to the IGP. *See* 7 N.Y.C.R.R. § 701.7(a)(1) ("A supply of inmate grievance complaint forms (form #2131) will be maintained in all special housing areas and will be given to inmates requesting them.").

      Second, the individual Plaintiff identified as threatening to interfere with his filing of grievances was a SHU officer at Washington, and the Washington IGP supervisor the Defendants called as a witness admitted corrections officers collected the inmates' outgoing mail. *See* Dkt. No. 122 at 47. While Waters further testified he performed rounds in the SHU, during which he could collect grievances and appeals, he also agreed Plaintiff most likely received the facility superintendent's denial of his grievance on September 14, 2019, and he did not perform rounds in the SHU that day. *See id*. at 32-33, 53-54.

Third, as Plaintiff points out, *see* Dkt. No. 123 at 11, while he did not produce actual documentation of his submission of his appeal to CORC, no such documentation would have been generated if, as his grievance alleged, his submissions were not being delivered to the facility's IGP office, *see* Dkt. No. 88-11 at 52-54, as a result of a corrections officer's interference. *See* Dkt. No. 122 at 18 (Waters explained, "[a]ll appeals" of superintendent's decisions are sent to the IGP office, where the appeals are "logged with the clerk on the clerk's log, and that is typed up with a cover page and mailed to Central Office.").

The Defendants' contention Plaintiff should have written to CORC to ensure receipt of his appeal is similarly unpersuasive. While Plaintiff agreed he was "aware" he could write a letter to CORC indicating he had not received a response to his appeal, *see* Dkt. No. 122 at 140, he never indicated any familiarity with the provision of Directive 4040 stating a "grievant should contact the IGP supervisor in writing to confirm that [his] appeal was filed and transmitted to CORC" if he does not receive written notice of receipt within 45 days of filing. *See id.* at 100; 7 N.Y.C.R.R. § 701.5(d)(3)(i). In any event, Plaintiff was housed in at least three different facilities in the 45 days following the Washington superintendent's denial of his grievance, which may have impacted his ability to track the progress of his appeals. *See* Dkt. No. 122 at 71 (Plaintiff was housed at Washington Correctional Facility until September 19, 2019); 75 (Plaintiff was housed at Upstate Correctional Facility from September 20, 2019, until October 1, 2019); 82 (Plaintiff was housed at Great Meadow Correctional Facility from October 1, 2019, until October 18, 2019).

Considering the foregoing, the undersigned finds administrative remedies under the DOCCS IGP were not available to Plaintiff.

## VI. CONCLUSION

17

**WHEREFORE**, it is hereby

**RECOMMENDED** that the District Court determine that the administrative remedies under the DOCCS IGP were rendered unavailable to Plaintiff; and it is hereby

**ORDERED** that the Clerk serve a copy of the Report-Recommendation on the parties.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW</u>**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

**IT IS SO ORDERED.**

Dated: March 4, 2024
Syracuse, New York

*[signature]*
Thérèse Wiley Dancks
United States Magistrate Judge