UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

DONNEIL FOSKEY,

                        Plaintiff,

-against-                                          9:20-CV-504 (LEK/TWD)

DANIEL PAIGE, *et al.*,

                        Defendants.

## MEMORANDUM-DECISION AND ORDER

**I.    INTRODUCTION**

Plaintiff Donneil Foskey commenced this action on May 5, 2020, against Defendants Connor Irish, Teudy Nuesi, and Daniel Paige ("Defendants"). Dkt. No. 1. On July 18, 2023, the Court denied Defendants' motion for summary judgment, Dkt. No. 88, and referred the matter back to the Honorable Thérèse Wiley Dancks, United States Magistrate Judge, to facilitate resolution of genuine disputes of material fact surrounding Plaintiff's exhaustion of his administrative remedies. Dkt. No. 100 ("Summary Judgment Order"). On December 4, 2023, Judge Dancks conducted an exhaustion hearing. Dkt. No. 122 ("Hearing"). Judge Dancks then issued a Report-Recommendation and Order recommending the Court find that administrative remedies were rendered unavailable to Plaintiff. Dkt. No. 125 ("Report and Recommendation"). Defendants filed objections, Dkt. No. 128 ("Objections"), and Plaintiff filed a response, Dkt. No. 129.

For the reasons that follow, the Court adopts the Report and Recommendation.

## II. BACKGROUND

### A. Facts and Hearing Testimony

The Court assumes familiarity with Judge Dancks' Report and Recommendation, including Judge Dancks' summary of the hearing testimony. See R. & R. at 2–10.

### B. Judge Dancks' Recommendations

Judge Dancks' Report and Recommendation made two relevant findings: (1) Plaintiff failed to properly exhaust his administrative remedies by following all the steps required by the administrative review process, id. at 13–14; and (2) the administrative remedies under New York Department of Corrections and Community Supervision's ("DOCCS") Inmate Grievance Program ("IGP") were rendered unavailable to Plaintiff, see id. at 17.

Regarding the first finding, Judge Dancks found that although Plaintiff put a response to the superintendent's denial of his grievance in his Special Housing Unit ("SHU") cell door, neither the Washington IGP office nor the Central Office Review Committee ("CORC") ever received it. See id. at 13. Since the relevant offices did not receive an appeal, Judge Dancks found that Plaintiff failed to follow the necessary steps to exhaust his administrative remedies. See id. at 13–14.

Despite finding that Plaintiff failed to follow the process of exhausting the administrative remedies, Judge Dancks found that DOCCS' IGP grievance process was not fully available to Plaintiff. See id. at 14. Judge Dancks provides multiple reasons for this recommendation. First, Plaintiff testified that Washington SHU Officer Paige, who collected inmates' outgoing mail and is also the brother of Defendant Paige, told Plaintiff that communications Plaintiff sent from his cell "weren't going to make it nowhere," and that Officer Paige would "protect his brother to the fullest." Hr'g 120:6–24; R. & R. at 15. Second, Plaintiff complained about his lack of access to

mail, grievance forms, and other supplies in his original grievance about Defendants. See Dkt. No. 88-11 at 52–54; R. & R. at 16. Lastly, Judge Dancks notes that "Plaintiff was housed in at least three different facilities in the 45 days following the Washington superintendent's denial of his grievance, which may have impacted his ability to track the progress of his appeals." Id. at 17 (citing Hr'g 71:18–18, 75:3–12, 82:1–2). Accordingly, Judge Dancks recommended finding that the administrative remedies under the DOCCS IGP were rendered unavailable to Plaintiff. See id.

### III. LEGAL STANDARD

#### A. Review of Report and Recommendation

"Rule 72 of the Federal Rules of Civil Procedure and Title 28 United States Code Section 636 govern the review of decisions rendered by Magistrate Judges." A.V. by Versace, Inc. v. Gianni Versace, S.p.A., 191 F. Supp. 2d 404, 405 (S.D.N.Y. 2002); see also 28 U.S.C. § 636; Fed. R. Civ. P. 72. Review of decisions rendered by Magistrate Judges are also governed by the Local Rules. See L.R. 72.1. As 28 U.S.C. § 636 states:

> Within fourteen days after being served with a copy [of the Magistrate Judge's report and recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1). When written objections are filed and the district court conducts a de novo review, that "*de novo* determination does not require the Court to conduct a new hearing;

3

rather, it mandates that the Court give fresh consideration to those issues to which specific objections have been made." A.V. by Versace, 191 F. Supp. 2d at 406 (emphasis in original).

"The district court may adopt those portions of a report and recommendation to which no timely objections have been made, provided no clear error is apparent from the face of the record." DiPilato v. 7-Eleven, Inc., 662 F. Supp. 2d 333, 339 (S.D.N.Y. 2009). "When a party makes only conclusory or general objections, or simply reiterates the original arguments, the Court will review the [report and recommendation] strictly for clear error." N.Y.C. Dist. Couns. of Carpenters Pension Fund v. Forde, 341 F. Supp. 3d 334, 336 (S.D.N.Y. 2018) (quoting Molefe v. KLM Royal Dutch Airlines, 602 F. Supp. 2d 485, 487 (S.D.N.Y. 2009)).

### B. Exhaustion of Administrative Remedies

The Prison Litigation Reform Act ("PLRA") states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "Accordingly, complete exhaustion of administrative remedies through the highest level for each claim is required." Key v. Toussaint, 660 F. Supp. 2d 518, 523 (S.D.N.Y. 2009) (cleaned up); see also Porter v. Nussle, 534 U.S. 516, 524 (2002) ("All 'available' remedies must now be exhausted; those remedies need not meet federal standards, nor must they be plain, speedy, and effective.") (citations and quotations omitted). Furthermore, "the exhaustion must be 'proper'—that is, [it must] 'comply with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings.'" Toussaint, 660 F. Supp. 2d at 523 (quoting Woodford v. Ngo, 548 U.S. 81, 90–91 (2006)) (cleaned up). "[T]he PLRA's exhaustion requirement applies to all inmate suits about

4

prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter, 534 U.S. at 532.

The Second Circuit has held that factual disputes concerning exhaustion under the PLRA must be determined by courts rather than juries. See Messa v. Goord, 652 F.3d 305, 308–309 (2d Cir. 2011) ("[Plaintiff] argues that, unlike other aspects of exhaustion, which he concedes are properly resolved by the court, determining whether an inmate asserts a valid excuse for non-exhaustion is a task for the jury. We are not persuaded."). Exhaustion is an affirmative defense, and the burden of proof at all times, remains on the defendant. See Ferguson v. Mason, No. 19-CV-927, 2021 WL 862070, at *3 (N.D.N.Y. Jan. 7, 2021), report and recommendation adopted, No. 19-CV-927, 2021 WL 531968 (N.D.N.Y. Feb. 12, 2021).

New York law establishes a three-step grievance and appeal process for prisoners. See N.Y. Comp. Codes R. & Regs. tit. 7 ("7 N.Y.C.R.R."), § 701.5. That process consists of the following: (1) "[a]n inmate must submit a complaint" with the Inmate Grievance Resolution Committee, id. § 701.5(a)–(b); (2) if the inmate disagrees with the response to the grievance, the inmate must "appeal to the superintendent," id. § 701.5(c); and (3) if the inmate disagrees with the superintendent's findings, he must "appeal to the CORC . . . within seven calendar days after receipt of the superintendent's written response to the grievance," id. § 701.5(d). "A prisoner has not exhausted his administrative remedies until he goes through all three levels of the grievance procedure." Toussaint, 660 F. Supp. 2d at 523 (cleaned up). The statute also states, "[i]f a grievant does not receive a copy of the written notice of receipt within 45 days of filing an appeal, the grievant should contact the IGP supervisor in writing to confirm that the appeal was filed and transmitted to CORC." 7 N.Y.C.R.R. § 701.5(d)(3).

The Supreme Court has identified three circumstances in which a court may find administrative remedies are not "available" for PLRA purposes:

> First, . . . an administrative procedure is unavailable when . . . it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates. . . . Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can navigate it. . . . And finally, the same is true when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.

Ross v. Blake, 578 U.S. 632, 643–44 (2016). The Second Circuit has interpreted these three circumstances as not exhaustive, since the Court in Ross focused on the "three kinds of circumstances that were 'relevant' to the facts of that case." See Williams v. Correction Officer Priatno, 829 F.3d 118, 124 n.2 (2d Cir. 2016) (citing Ross, 578 U.S. at 643).

## IV.  DISCUSSION

No party objects to Judge Dancks' first recommendation that Plaintiff failed to exhaust his administrative remedies. As such, the Court will review this finding for clear error. See DiPilato, 662 F. Supp. 2d at 339. The Court agrees with Judge Dancks that, since the relevant offices did not receive an appeal, Petitioner failed to follow the necessary steps to exhaust his administrative remedies. Accordingly, the Court adopts Judge Dancks' first recommendation.

Defendants make several objections to Judge Dancks' second recommendation that the remedies were rendered unavailable to Plaintiff, most of which center on sufficiency of the evidence. See Obj. at 8–14. Since objections are raised, the Court will review Judge Dancks' findings de novo. See A.V. by Versace, 191 F. Supp. 2d at 406.

Defendants first argue, contrary to Judge Dancks' finding, that the evidence demonstrates Plaintiff was aware of the relevant grievance procedures and neglected to follow them. See Obj. at 8–10. Defendants dispute that "Plaintiff mailed an appeal" and "that placing mail in a cell door

6

was the proper way to mail an appeal." Id. at 9. Defendants further argue that although "Plaintiff explicitly testified that he is aware that he could send [a follow-up] letter" after allegedly mailing the appeal, Plaintiff did not send a follow-up letter. Id. at 8. These objections, however, relate to whether Plaintiff exhausted his administrative remedies—not to whether they were *available* to him. Whether Plaintiff was "aware" of the procedure of filing an appeal or follow-up letter does not preclude "prison officials [from] thwart[ing] his efforts to utilize the grievance process, thus rendering it unavailable to him." R. & R. at 14 (citing Ross, 578 U.S. at 643–44).

Next, Defendants argue that Plaintiff's claim of mail obstruction is disproven by the evidence. See Obj. at 10. Defendants argue that the evidence instead demonstrates a "free flow of outbound and inbound mail at both Washington CF and Upstate CF." Id. Defendants point to the fact that Plaintiff sent out several unrelated grievances, all of which were responded to, and that "Plaintiff did not complain to the Grievance Office about any issue with sending his alleged appeal to CORC." Id. Judge Dancks correctly states that bare assertions of mail obstruction without any supplemental evidence or named individuals is not sufficient to establish administrative remedies were unavailable. R. & R. at 15 (citing Rosado v. Fessetto, No. 09-CV-67, 2010 WL 3808813, at *7 (N.D.N.Y. Aug. 4, 2010), report and recommendation adopted, No. 09-CV-67, 2010 WL 3809991 (N.D.N.Y. Sept. 21, 2010); Rodriguez v. Cross, No. 15-CV-1079, 2017 WL 2791063, at *7 (N.D.N.Y. May 9, 2017), report and recommendation adopted, No. 15-CV-1079., 2017 WL 2790530 (N.D.N.Y. June 27, 2017)).

Defendants' mail obstruction argument fails because Plaintiff's assertion is supported by relevant evidence. For example, Judge Dancks found that Defendants failed to provide basic supplies to fill out grievance forms. See R. & R. at 16; Dkt. No. 88-11 at 52–54. Judge Dancks found that this lack of supplies fell below the "minimal standards" required by Directive 4040,

7

which requires, *inter alia*, a "supply of inmate grievance complaint forms . . . be maintained in all special housing areas and will be given to inmates requesting them." R. & R. at 16 (citing 7 N.Y.C.R.R. § 701.7(a)(1)). This is further supported by Plaintiff's assertions in his original grievance about his lack of access to mail and basic supplies to fill out grievance forms. See Dkt. No. 88-11 at 52–54; R. & R. at 16. Plaintiff also stated that Officer Paige threatened to prevent Plaintiff's grievances from being sent anywhere. See Hr'g 120:20–24; R. & R. at 9. These are precisely the kinds of actions the Supreme Court has deemed as rendering administrative remedies unavailable. See Ross, 578 U.S. at 643–44 ("[A]n administrative procedure is unavailable . . . when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.").

Defendants argue that evidence regarding the alleged unavailability of grievance forms is irrelevant to the disputed issue of whether Plaintiff appealed a grievance determination to CORC. See Obj. at 12. The Court disagrees. The availability of grievance forms and supplies speaks to the general willingness of the facility to make the grievance process available. Plaintiff testified that corrections officers refused to give him a pen or paper or grievance forms, such that he had to obtain a pen and paper from another inmate in the SHU by using strings to "fish it back to [his] cell." Hr'g 123:10–18. Even though Plaintiff's testimony described how Plaintiff filled out the original grievance form, not the appeal, this hardship reflects on the general availability of the grievance process within the facility. Therefore, Judge Dancks correctly found that this is evidence of the unavailability of administrative remedies.

Defendants also object by stating that any alleged threat by Officer Paige was eliminated by the time Plaintiff was transported to another facility. See Obj. at 11. It is unclear whether this is true. One witness explained that all appeals of superintendent decisions are sent to the IGP

8

office, where the appeals are "logged with the clerk on the clerk's log." Hr'g 19:10–13; see R. & R. at 17. But even assuming Officer Paige could not actually interfere with Plaintiff's mail, his threat was still designed to prevent Plaintiff from successfully filing an appeal. Indeed, administrative remedies are unavailable when prison administrators "intimidat[e]" a party to prevent utilization of the grievance process. Ross, 578 U.S. at 644. Thus, it was the effect of Officer Paige's threat and intimidation on Plaintiff that was critical, not whether he could have actually interfered when Plaintiff was sent to a different facility. Therefore, Judge Dancks correctly found that the Officer Paige's threat of mail obstruction was evidence of the unavailability of administrative remedies.

Defendants next object that there is no evidentiary basis that Plaintiff's relocation to subsequent facilities prevented him from sending an appeal follow-up letter. See Obj. at 11–12. The Court disagrees. Plaintiff's relocation to three separate facilities within a short time frame could present barriers to Plaintiff's ability to track his appeal or file a follow-up letter. Defendants do not present a single case to the contrary in their Objection, and related case law suggests that an inmate's transfer to another facility can render remedies unavailable. See Romano v. Ulrich, 49 F.4th 148, 155–56 (2d Cir. 2022) ("Romano's transfer to [New York's Office of Mental Health's] custody rendered him unable to file any grievance against DOCCS even though he was well within the twenty-one-day time limit under Section 701.5(a).").

Defendants lastly object that the Report and Recommendation did not address Plaintiff's credibility and that the evidence demonstrates Plaintiff is not credible. See Obj. at 13. As an initial matter, Defendants are wrong to claim that "it is Plaintiff's word alone that supports his allegation[s]." Id. at 13. In this Memorandum-Decision and Order, the Court has detailed sufficient proffered evidence that supports Plaintiff's testimony, such as his transportation to

9

different facilities and the unavailability of proper supplies. Regarding Plaintiff's credibility, Defendants argue that the threats from the Officer Paige were alleged for the first time at the Hearing and were not raised in Plaintiff's opposition to Defendants' motion for summary judgment. See id.; see generally Dkt. No. 96-2. While that may be true, it is not atypical that new facts emerge at an exhaustion hearing; indeed, the reason the Court ordered the Hearing was to receive a fuller understanding of the facts beyond what Parties provided in their briefs. See Summ. J. Order at 10. Defendants lastly argue that aspects of Plaintiff's testimony contradict itself, thus further damaging Plaintiff's credibility. See id. at 13–14. The Court is not convinced. For example, Plaintiff's statements about the time he spent in a dry cell, which Defendants argue are inconsistent, are not relevant to exhaustion of remedies nor particularly surprising when someone is subject to those conditions. Plaintiff's other statements, while disputed, do not appear to be contradictory.

In summary, the Court agrees with Judge Dancks' recommendation that the administrative remedies were rendered unavailable to Plaintiff.

## V.   CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that the Report-Recommendation and Order, Dkt. No. 125, is **ADOPTED**; and it is further

**ORDERED**, that the administrative remedies under the DOCCS IGP were rendered unavailable to Plaintiff; and it is further

**ORDERED**, that this matter is referred back to Magistrate Judge Dancks for further proceedings; and it is further

**ORDERED**, that the Clerk serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:     May 10, 2024
           Albany, New York

LAWRENCE E. KAHN
United States District Judge